UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 3:26-cr-35-TKW-HTC

MONTELES TERRELL BURDEN

_____/

<u>ORDER OF DETENTION</u>

On April 13, 2026 the Court held a hearing on the government's oral motion for detention pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the pretrial services report, the evidence presented at the hearing, and the arguments of counsel, the Court finds Defendant shall be detained pending trial because there are no conditions or combination of conditions which will reasonably assure Defendant will not be a risk of flight or a danger to the safety of the community if released.

### I.    **The Bail Reform Act**

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Although under the Act only a limited group of offenders should be denied bail pending trial, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), the Act also reflects "the deep public concern ... about the growing problem of crimes committed by persons on release

and the recognition that there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (quotations omitted). "Congress has determined that [w]hen there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* (quotations omitted) (alteration in original).

A court may release a defendant pending trial on appropriate conditions, 18 U.S.C. § 3142(a)(2), or detain the defendant, *id.* § 3142(a)(4). *See Reno v. Koray*, 515 U.S. 50, 57 (1995). The court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467

U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an abiding conviction that the truth of its factual contentions are 'highly probable'"). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Chimurenga*, 760 F.2d at 405. Additionally, "danger to the community" does not refer to simply risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. 18 U.S.C. § 3142(e)(3). Those cases are identified in 3142(e)(3) and include an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the

presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d 1354, 1355 (10th Cir. 1991). Also, even in a rebuttable presumption case the burden of persuasion remains with the government. *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with a felony drug offense, which carry a maximum term of imprisonment of more than 10 years.[1] "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress' belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community." *United States v. Kidd*, 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

---

[1] Count One, which charges Defendant with conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamines and 500 grams or more of a mixture containing methamphetamines, carries a potential penalty of a mandatory minimum of 10 years' incarceration.

3:26-cr-35-TKW

Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

## II. Analysis

### A. Nature and Circumstances of the Offense Charged.

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).

Here, Defendant has been indicted by the grand jury for three felony offenses: (1) conspiracy to possess with intent to distribute over 50 grams of methamphetamines and 500 grams of a mixture containing methamphetamines; (2) conspiracy to use a communication facility to commit the drug offense, and (3) conspiracy to commit money laundering. As testified by DEA Special Agent J. Swearingen, the circumstances of the offenses are as follows:

Beginning in at least September 2025, DEA, along with the United States Postal Service ("USPS") began an investigation into certain packages shipped

3:26-cr-35-TKW

through USPS that law enforcement believed contained controlled substances shipped from California to Pensacola Florida. Law enforcement obtained search warrants on the packages and discovered large quantities of methamphetamines in the packages. As shown in Gov't Exhibit 1, one package seized in October 2025 contained over 7,000 grams of methamphetamines and a second contained over 5,000 grams of methamphetamines. In January 2026, the Government intercepted a package that contained over 10,000 dollars and another containing more than 10 pounds of methamphetamines. In February 2026, the Government intercepted a package containing over $19,000. Finally, in March 2026, Defendant was observed traveling from Pensacola back to Crestview where he met with an individual and provided that individual with a bag. Based on a state search warrant, that bag was found to contain over 2 pounds of methamphetamines.

The Court finds the nature and circumstances of the offense charged weighs in favor of detention. The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). A "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting).

B. Weight of the Evidence.

This factor requires the district court to consider evidence proffered by the government which it intends to use at Defendant's trial. In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing

the defendant as a risk to the safety of the community. As such, the weight of the evidence against Defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

As discussed during the testimony of Agent Swearingen, the Government's evidence against Defendant includes (1) records showing the IP addresses tracking the parcels intercepted by the Government belonged to phones assigned to Defendant; (2) videos showing Defendant and the co-defendants shipping the parcels at issue; (3) photos obtained from Defendant's phone included the USPS receipts for two of the parcels, as well as drugs, and firearms (Gov't Exh. 2); and (4) Defendant is affiliated with the addresses at which the packages were to be delivered.

The Court finds the weight of the evidence to be substantial and to weigh in favor of detention. The defense does not dispute that the weight of the evidence is strong.

### C. The History and Characteristics of the Defendant.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

history, and record concerning appearance at court proceedings.   18 U.S.C. § 3142(g).

Defendant is 40 years old and is currently living with the mother of his 10-year old daughter.  He has also lived on and off with his mother.  He was raised in Crestview and has been there or in the Pensacola area his entire life.  Defendant previously owned a car dealership and most recently was employed with a company called Secure Land and Tree, although the dates of employment are unclear. Nonetheless, defense proffered that Defendant will be able to return to that employment.

Defendant has five minor children, including a 1-year-old, and is active in their lives.  He provides them with financial support, even though he reports income of only $3,500 a month.  Defendant is an occasional marijuana user and last used shortly before his arrest.

His criminal history includes the following:  (1) a 2008 FTA on a possession with intent to distribute controlled dangerous substances and a conviction on the drug charge; (2) a 2019 conviction for reckless driving reduced from DUI charge (Gov't Exh. 5); and (3) a pending state charge for larceny, sales tax, failure to remit over $100,000, for which he is currently on bond.

The Defendant's mother and the mother of his 10-year old daughter testified on his behalf.  While both women testified regarding Defendant's involvement with

his children and his financial support of them, as well as his ties to the community, and his employment, they were also unaware of his involvement in the sale or distribution of controlled substances and were not aware that the packages were being delivered to their addresses.

The Court recognizes Defendant's criminal history is not as serious or significant as ones the Court generally sees in these types of cases.    Although Defendant has four charges for possession of a controlled substance, he was only prosecuted and convicted of one charge in 2018, which resulted in 2 years confinement on a 5-year suspended sentence and early termination of probation.  The Court also recognizes that none of the convictions involved violent crimes *per se*.

However, it cannot be disputed drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). "[A]n indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community."  *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995).  Indeed, studies "demonstrate a direct nexus between illegal drugs and crimes of violence."  *Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring).

Undoubtedly "society is endangered when courts release those individuals into the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330-31 (D.C. Cir. 1982). "[D]rug offenders pose a special risk of flight and dangerousness to society." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *see also United States v. Roberts,* 2022 WL 11455294, at *4 (M.D. Ala. Oct. 19, 2022) ("The fact that Roberts has not been charged with any crimes of violence or possession of firearms does not mitigate the danger Roberts presents by his pattern of continued involvement in drug trafficking, which constitutes a danger to others and the community."). In fact, although Defendant has not been charged with any firearm offenses, one of the photos discovered by law enforcement on Defendant's phone was of firearms.

The Court finds the history and characteristics of Defendant weigh in favor of detention.

D. The Nature and Seriousness of the Danger Posed by Release.

The Court finds there is a serious danger that, if released, Defendant will return to drug trafficking to support himself and his family. *See United States v. Martin*, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant— 'pose a significant risk of pretrial recidivism.'"). The risk a defendant will continue

to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

As the Government argued, at the time several of the packages were shipped, Defendant was on bond with the State, indicating that Defendant is unlikely to cease criminal activity while on release. Moreover, Defendant has engaged in conduct to avoid detection by law enforcement including traveling in different cars, some of which are rental cars, cars not registered to him, or cars containing license plates that are not registered to them; having packages shipped to multiple address; and discarding his cell phone after the State searched a package he gave to a co-conspirator. And, although he may have self-surrendered in this case, it is not known whether Defendant understood that doing so could result in his continued detention without bond.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted). While Defendant argues there are conditions which can be imposed, such as GPS monitoring, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his] mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4

(M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined.").

GPS monitoring would also not keep Defendant from fleeing to another district. Motivated persons are certainly known to cut off their monitors. *See United States v. Benevolence Int'l Found., Inc.*, 222 F. Supp. 2d 1005, 1007, (N.D. Ill. 2002) (noting that neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee). And given the mandatory 10-year sentences that Defendant is facing, Defendant has a strong motive to flee. *United States v. Iverson,* 2014 WL 5819815, at *4 (W.D.N.Y. Nov. 10, 2014) (Arcara, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long ... a defendant has stronger motives to flee.") (internal citation omitted); *see e.g., United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015); *United States v. English*, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release and a mandatory sentence that incentivized fleeing); *United States v. Dodge*, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Thus, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not pose a danger to the community.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded a reasonable opportunity to consult with counsel in private while in custody.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 13th day of April, 2026.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

3:26-cr-35-TKW